The United States Court of Appeals for the Ninth Circuit is now in session. Good afternoon, counsel. We are here just to hear your argument in this one case, which we call now it's Ulleseit v. Bayer Healthcare Pharmaceuticals, Inc. When counsel for the appellants is ready to proceed, we'll be happy to hear from you. And that is Mr. I'm not going to try to pronounce your last name, sir. Thank you very much. May it please the court. My name is Edward DeMolin, and I represent the Bayer defendants, which are the appellants. Thank you, Your Honor. I'd like to reserve three minutes for rebuttal if I could. In this case, California plaintiffs claim that Bayer, which is an out-of-state pharmaceutical company, should have added another warning to the highly regulated label that comes with the prescription medicine. Even though the case is a pure dispute between citizens of two different states and diversity jurisdiction therefore exists, the plaintiffs also sued California defendants to block Bayer's removal and keep the case in state court. But the in-state defendants have nothing to do with the claims. They're drug distributors that bring medicines to health care providers. The distributors have no legal right to change the medicines warning label, and indeed, they would violate federal law by doing so. Following the Supreme Court's response... Can I ask you to just pause right there? And what is it specifically that you rely upon in federal law that would bar the distributors from saying anything in addition to what appears on the label? Well, Your Honor, I think there are a number of things. We cited a number of cases that have held that distributors are not permitted to change the label of pharmaceutical drugs, that that right belongs only to the applicant. And I think that that can be found not only in cases we cite, such as the Brazil case and other litigations, but cases in this very litigation where claims have been made regarding the same class of drugs here. I would refer the court to the Pirate opinion in the Northern District of Illinois that held as much on that point. And I think as to the as to the doctrine... Even if they can't change the label, though, could they send a letter or say something orally? I mean, is there something else that could be done when a drug is distributed? Your Honor, the answer to that question... There are two points, I think, to that question. The first is that the term labeling in the federal regulations is far broader than just the thing that goes on the drug itself. In general, it refers to anything that that accompanies a drug. And the Supreme Court has made that point before. That's your question. Letters, I think, is a good example. There's a thing called a dear doctor letter that can be sent out to physicians regarding new risks. The Supreme Court has held that that counts as labeling. So, in other words, a distributor could not send out a dear doctor letter because that would count as labeling. And I think, you know, to Judge Watford's question as to what in particular do we rely on? I would refer the court to the regulations regarding changes to a label for an approved drug, in particular 21 CFR section 314.70. That regulation spells out very clearly who is permitted to change the labeling and in what circumstances. It's very clear from section 314.70 that it is the applicant that has the ability to change the label. And I think that goes back to a lot of what we talked about in the brief. Not only in terms of it is the applicant, meaning the the pharmaceutical company that sponsors a drug that first drafts a warning and gets it approved by the FDA under the it's also the applicant under that regulation I just cited section 314.70 that has the ability to change it after it's approved. And that's consistent as well with the Supreme Court's decision in the mensing case, which we cite. That was a case where the Supreme Court was considering whether even a generic pharmaceutical company. So in other words, an applicant might get a drug approved and a generic company would get a drug approved that that is similar in kind, but it's not the same drug. Mensing was clear that even a generic pharmaceutical company because it was not the applicant would not have the ability to change the label. Well, I thought I thought that there was. That's why I was asking the question I did before is that I thought part of what the court relied upon in mensing, but I do want you to correct me if I'm wrong on this. I thought there was a separate regulatory or maybe even statutory provision that specifically applied to generic manufacturers and said you may not do the following. So in other words, there was a there was federal law that was directed specifically at the generic manufacturers, and so that's why the court came out the way that it did. And I was asking if there was something comparable that applied directly to distributors such that you could say no, it's just like in mensing under federal law. There's a there's a statutory provision or regulatory provision that says to distributors, thou shalt not do the following. And then if that were true, then I could see how the reason in mensing would apply pretty squarely in this context. But so is there something comparable? That's, I think, my main question to two points on that. Your honor. First of all, you're right that in mensing the court relied on a variety of materials and some were, as you say, directed specifically to generic manufacturers. But mensing also relied specifically and at some length on the fact that only the applicant could could avail itself of the CBE regulation, which is the part of the CFR that I cited earlier, 314.70. And that is the the only basis on which a company can unilaterally change the warning label on a drug. So that that was certainly a big part of what the Supreme Court said in mensing, although it may not have been the only thing I think beyond mensing. Once again, we've cited excuse me to someone. I misheard. I think beyond mensing. Again, I would direct the court to a number of decisions that have applied mensing in in other in district courts to hold that claims against distributors are preempted. Again, the pyrrhic case in particular. Can I stop you there? Because I think you're going to concede that none of those are binding on us. Right. I think that mensing obviously is binding on this court. And I think that I'm talking about the cases that apply to the distributors specifically. We don't have any binding authority that controls as to distributors specifically. Is that a fair statement? That's a fair statement, Your Honor. OK. And are there and you're absolutely right. There are definitely cases at the district court level that come out your way on the merits of this preemption defense that you're advancing. And that seems to me a strong argument. Are there, though, decisions at the district court level that go the other way on the merits? Your Honor, to be your honor, I'm not aware of cases holding at. I'm not aware of cases holding that claims against a distributor for failure to warn in copper. You know, I'm not aware of cases holding that they're not preempted. The appellees cite a number of cases from this circuit where courts have said that they will remand cases that have been removed because someone is arguing that due to the preemption factor, there's fraudulent joinder. But I think that, unfortunately, in many of those cases, the district courts are applying the law of this circuit in an incorrect way, in the same way that we've argued the district court here applied it, which is to say that they looked at the Hunter opinion and they said, we're not even going to consider preemption as a defense at all in the context of fraudulent joinders. So I would submit those cases are not authority going the other way as to whether. Let me just kind of frame the issue as I see it. And then you can tell me if I'm missing something or help me navigate through it. I would grant you that your argument on the merits is quite strong. I mean, I read Mensing and boy, it seems hard to see why the reasoning as applied to generic manufacturers wouldn't also extend to distributors. So I grant you that. But it seems to me from our Hunter, I'm trying to remember the two main cases we have on this fraudulent joinder issue. But whatever those two cases are that you all are citing, I read them as saying, really, the inquiry at the fraudulent joinder stage is not it. We're certainly not trying to resolve the merits of the preemption decision. We're just the preemption issue. We're just trying to figure out is essentially is the plaintiff's attempt to drag the McKesson defendants into this case just completely frivolous. Like on a quick review, everybody can just see it's so obvious that, of course, the claims are going to fail. And so therefore, that's how we come to the conclusion that there's fraudulent joinder. I guess that's where I get stuck. It seems to me that, yeah, you have a very strong argument. But can I say that it's frivolous? I don't know. I mean, I've sat around debating the issue with my law clerk for a while. It seems to me that suggests just by itself that there's there's something. You know, it's not just so obvious that you can look at the pleadings and realize immediately. Oh, yeah. This claim is completely meritorious. Well, Your Honor, let me frame it in the following way, if I could. I think there are the opinions in Hunter and in Grand Care both said that. And I think that was the other opinion referring to both said that in some circumstances, Hunter said a preemption defense that was being used in that case, which frankly was legally quite dubious. And indeed, it didn't make a lot of sense at all that it did not. It could not be accomplished through a summary inquiry and it could not be resolved through discreet, undisputed facts. In this case, we have discreet, undisputed facts. We have the fact that the defendant is a distributor of medications, not a pharmaceutical company. And we have the fact that a distributor is preempted by federal law from making any changes to a label. They are not permitted when moving a drug from place to place to alter the warning on their own or do anything of the kind. So I think that I think that that gets to the point on on your other question. Can I interrupt there for a second? So it seems like this complaint has two causes of action or two claims, and one of them is just negligence. And you're talking a lot about label requirements. And it's not clear to me that the negligence claim is only about labeling, even if labeling includes letters and other things in the broader way. How do we know that California negligence is something broader? Well, Your Honor, as to the scope of the claims, the district court described this as a failure to warn claim. We described it as a failure to warn claim. The plaintiffs at police did as well in their briefing here. What I would point to is in the complaint, I would I would note paragraph 68, which I think really lays out the theory that they have of this case. And it's all about the labeling. I mean, previously in the complaint, they quote the labeling. They discuss the FDA meetings that led up to the labeling. They talk about why the manufacturers should have, in their view, changed the labeling. And in paragraph 68, we get defendants have failed to update their label to reflect the extensive evidence and so on. So this this case is all about the FDA approved labeling. That's been our position from the start. The plaintiffs. I mean, paragraph 77, though, says failed to exercise reasonable care in the design, formulation, manufacture, sale, testing, marketing or distribution. I know you're not involved in or that McKesson is not involved in all of those, but McKesson is involved in some of them. So I'm not sure how we know that the second claim isn't different. Your Honor, I see that my time is about to be up. But if I could briefly answer that question. The other points that your honor just mentioned, I believe, haven't been brought up by the appellee because they're even more obviously preempted. For example, McKesson is not permitted to change the design of an FDA approved drug. And that goes to most of those. And there are absolutely no facts in the complaint that go to anything else except for the FDA approved label. And there's no allegation that they did anything other than distribute it with the FDA approved label. But before you sit down, can I ask you to go back to Judge Watford's question? Do you do you agree with the premise of that question that your obligation at this stage is to show that the claim against McKesson is not just lacking in merit, but but essentially frivolous in the Bell against Hood sense? Your Honor, the grand jury opinion discussed Bell versus Hood, but it said that the analysis here was similar to that analysis. It didn't say it was the same thing. We understand that the analysis is is a slightly higher bar than 12B6, in part because extrinsic facts can be introduced. And it's different in that way. I would not agree that that it has to be frivolous or comparable or the same as 12B1. And we think a strong preemption argument based on those discrete undisputed facts that were mentioned in both Grand Care and Hunter, that should be enough to clear the hurdle at this point. Thank you. And I'll reserve the balance of my time. Very good. OK, let's hear from counsel for the plaintiffs. Good afternoon, Margo Cutter, on behalf of plaintiff's FLEs. May it please the court. First, this court should affirm that many California district courts and other courts that have looked at this issue in finding that this was not fraudulent joinder. There are upwards of 25 California district court decisions concluding that the viability of claims against pharmaceutical distributor McKesson are colorable. Courts examining this issue have uniformly decided that McKesson is a proper defendant. Can you clarify for us exactly what your claim against McKesson is? Yes, Your Honor. Under California law, distributors can be held strictly liable for defective products. By agreeing to distribute and sell their products in California, the conduct of the manufacturers is imputed to the distributors. McKesson has elected to profit and place these drugs in the chain of commerce. They've selected which drugs to offer and who to offer them to. Thus, liability is imputed to them as a matter of public policy. What's your theory of how the drug is defective? Isn't it just that there wasn't an adequate warning about its hazards? Yes, that's the theory against appellant Bayer. However, the claims against McKesson are for the distribution and sale of the drug. But in order to make out a claim under state law, you have to show not just that they distributed and sold the drug, but that the drug they distributed and sold was defective. You could imagine a claim like they left it in the truck at too high a temperature or they dropped the package. But you're not alleging anything like that. Your claim is based on the drug itself was dangerous. And as I understand it, that claim is entirely based on there not being a warning about its dangers. Is that right or is there something else? That is the essence of the claim is based on the on the manufacturer's failure to warn. However, under California law, distributors are in the chain of commerce and are properly liable for the products that they elect to place in in the chain of commerce. As this court noted in Grand Care, there is a general presumption against. Sorry, can I interrupt you? I mean, how is this different than generics? So, I mean, could California say that generic drugs are also liable for selling a defective product if the warning isn't right? This is entirely different from generic drugs. There are no no cases nor statutes that say that pharmaceutical distributors are subject to the same rules as those that appellants cited in mensing or in Bartlett. But you agree that the distributor cannot change the label right under federal law. The question of what McKesson could do to change the label or whether the claims against McKesson rise and fall with the claims against appellant is a red herring. McKesson has elected to place the product into in sale into the chain of commerce in California. McKesson is a proper defendant under established California law. And it's not therefore fraudulent to have included them in this suit. The question it is fraudulent, or at least we're prepared. We were able to say that fraudulent joinder has occurred. If your preemption, your response to the preemption defense is completely lacking in merit. Right. I mean, it seems to me that the fact that it might be proper under California law to include them as a defendant. That's neither here nor there on the way the issue has been framed to us. The question is whether those claims are going to end up being preempted as a matter of federal law. California has a parallel state law claim regarding products liability to the federal law claims. And so the question of whether preemption is viable is not properly before this court. The issue relevant today is not whether or not claims against McKesson are preempted. That issue hasn't. So what if we disagree with your reading of Hunter? So what if we think that Hunter does not apply here because Bayer and McKesson are in different postures as to the label? And so let's say we think that preemption is at least possibly before us. What is your argument, then? That it's not preempted. Appellees are not conceding preemption, but even if the court were to agree that claims against McKesson might be preempted. That is not a basis for finding fraud and joinder is an open question that deserves to be litigated. And that issue would be properly decided on demur. McKesson is not even a party before this court today. It's a defense of that party. Appellants have brought this issue before the court. Sorry. So are you saying that the interpretation of Hunter is debatable enough that that means it can't be fraudulent? Or are you saying it's debatable whether this claim would be preempted under federal law? Both. I'm saying that. So what can you explain your argument on the second one? What is the argument that this claim is not preempted under federal law? Yes. California has a parallel state law claim under which. Distributors are part of the chain of commerce and may be held liable for their actions within that chain. McKesson has elected to offer this product. They offer a wide variety of products. And they've offered this Gatling based contrast agent. And. I'm still struggling, then, with my question earlier about the generics. You could say the same thing about a generic just right. They put it into commerce. They're selling it in California. Why? Why does that mean that it's not preempted? I don't understand. McKesson can choose to stop selling the drug when they know that there's been a failure to warn. That's it. Isn't that just. I mean, the Supreme Court confronted that in the generic context after mincing and in Bartlett. Right. And then they said, you know, it's you could always avoid impossibility preemption by just not engaging in the activity. But that that doesn't get you out of preemption. So. So why? Why is that an answer here? It's negligence because they have failed to pull the drug. So California has a parallel state law claim to the federal laws. Apply here. So. But you're. I mean, so as I understand this right now, you can't say what they should have done is change the label because they can't do that under federal law. So your answer as to what they should have done that would avoid preemption. I mean, in order for your claim to avoid preemption, you're saying that what McKesson should have done is just not distribute the drug at all. Right. Once they realize that the drug was not safe, they ought to have ceased the sale of it in the state of California. However. But then so then I guess going back to Bartlett, I mean, isn't a claim a state law claim that because we the state have determined that the labeling of this drug is inadequate? You shouldn't sell it in the state. Isn't that claim preempted? No, because it's after the fact. I'm sorry. What's what's after the fact? After the events indicating that the drug is not safe for sale. After the initial labeling that's created. But regardless. McKesson is not a party even before this court. That's a defense that McKesson may raise upon remand. However, the fact that there is an open question regarding McKesson's liability is enough to resolve this appeal in itself. In Apple's view, McKesson may be liable, just as every other distributor could be liable in a product liability action in California. McKesson is in the stream of commerce. There is no recognized exception to that well-established rule for pharmaceutical distribution companies. Appellant can cite no case showing that preemption applies. That alone is enough to resolve the appeal. The question is fragile and joined her. Your opponent says, hang on, hang on. Your opponent says that the cases that have reached the merits have all said that the claims are preempted as as against the distributors. Do you have. Is that true? Or do you have cases that are on the merits that go the other way? Not so. So, yes, there are cases that go the other way and find that distributors are properly parties to these cases. But on the merits, not the fraudulent, not in the fraudulent joinder context, because that's what what he indicated. There are cases that go your way on the fraudulent joinder issue. I'm talking about on the merits. Right. There are cases that California courts have allowed cases against McKesson to go forth and finding that they're not preempted. Just what's your leading case on the merits issue? Your Honor, I don't have it off the top of my head, but I'm happy to submit a supplemental letter of the court. Was it cited in your brief? I hope. I believe so. Yes. We'll find it. Don't you don't need to submit anything, but you don't. I would have expected you to be at the ready with sites that come out on the merits your way. But you don't you can't think of a case off the top of your head that does that. Not as to the issue, exact issue of preemption, Your Honor. However, defendants also appellants also fail to cite a single case finding these cases against McKesson in California are preempted. That's their remains in California. Forget about in California, because it doesn't matter what state's law. Again, we're talking about preemption. I think you keep getting hung up on peculiarity of the California law. Federal preemption applies. It's going to apply no matter which state's laws. So forget about the California connection. Just nationwide. Are there. He's saying that all of the cases across the country in which a district court has reached the issue on the merits as to whether claims of this sort are preempted as against the distributors have held that they are preempted and that you're not going to be able to cite a single case on the merits that comes out your way. You're saying that that's just incorrect. And we're going to find the contrary cases in your brief. Is that right? Yes, Your Honor. I am under the impression that these California courts have elected to keep McKesson in these cases based on the issue of product liability. And often the manufacturers will take up the defense on behalf of the distributors. And so often these distributors do not stay in the case for long because the manufacturers take over their defense. But that doesn't remove the fact that potential settlement and judgment against McKesson is viable, thereby making the joinder proper and absolutely not fraudulent on behalf of appellees. Appellees absolutely intend to take discovery against McKesson when the case goes forward. There is no record of fraud on behalf of appellees. And so as this court stated in Gauss, when our defendant resorts to arguments about the merits of plaintiff's case, it has failed to overcome the strong presumption against removal jurisdiction. Given the legal landscape and the requirement that ambiguity or doubt about substantive state law be resolved in favor of remand, the court cannot say there's no possibility that a cause of action for strict liability against a prescription drug distributor like McKesson is viable under California law. Because appellant has not met their burden, appellees request this court find that McKesson is not a fraudulently joined defendant. Finding a fraudulent joinder would result in the dismissal of a viable defendant in this case. McKesson, who is not even before this court today, may offer preemption as a potential defense on remand, but they ought to remain a party and destroy complete diversity between plaintiffs and defendants. Thank you. Does it look like there are any other questions? You are finished with your argument? Yes, Your Honor. Okay, very good. Thanks for your argument. Let's go turn back to counsel for the appellants then. Thank you, Your Honor. Three brief points on rebuttal. The first is, I think as to the plaintiff's claims, what we just heard is that they're based on a failure to warn theory that is based on the product's label. That is exactly what we presented in our briefs. Further, I completely agree with Judge Miller's point. To the extent it is a stop-selling theory, that is squarely preempted by a mutual pharmaceutical company versus Bartlett that rejected that theory and said it was inconsistent with preemption jurisprudence. The second point is, there is no case cited in the appellee's brief that says a California court held that these claims could go forward despite a preemption argument. I would refer the court to pages 19 and 20 of our reply brief. We pointed out there that there's only one case that they cited from California that addresses preemption at all, and it was in the context of exercise equipment. So it doesn't have anything to do with the distributors. Moreover, we referred the court on page 20 of our reply to the Pradoxa cases, which is a recent case in California State Court that is entirely consistent with the argument I presented here today that says that the CBE regulation must be utilized in order to change the label of an application that's been approved. I don't know if I'm permitted to finish my third point. Yes, please. Thank you, Your Honor. I would just like to say as a final point that it is not necessary for us to have Supreme Court authority on this point in order for it to be clear that the claims are preempted. Indeed, I would submit this issue will never reach the Supreme Court because there will never be two courts of appeals that disagree about whether distributors are permitted or not under federal law to add a warning to a drug label. Frankly, I think that's why most of this authority has existed at the district court level, and it's clear there's a consensus of authorities, and that's based on the federal regulations that we cite. And for those reasons, as well as the others in our brief, we would ask this court to reverse the decision below and hold that there is federal jurisdiction in these cases. Thank you very much. Thank you both for your arguments. The case just argued and submitted, and we are in recess. This court for this session stands adjourned.
judges: WATFORD, FRIEDLAND, MILLER